106

CHARLOTTE HICKS, as Administratrix of the Estate of CHARLOTTE SEBRING, Deceased, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 31248.)

CARL D. HORTON, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 31249.)

DANIEL E. HORTON, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 31250.)

WILLIAM LADD, an Infant, by GERTRUDE LADD, His Guardian ad Litem, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 31257.)

GERTRUDE LADD, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 31253.)

GERTRUDE LADD, as Executrix of MERTON LADD, Deceased, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 31256.)

Third Department, December 20, 1956.

*Edmund J. Hoffmann,* for Charlotte Hicks and others, appellants.

*James J. Barrett* for Gertrude Ladd and others, appellants.

*Jacob K. Javits, Attorney-General (John R. Davison, Arthur W. Mattson* and *Harold S. Coyne* of counsel), for respondent.

BERGAN, J. State Highway Route No. 13 is a main north-south road between Cazenovia and Cortland. It does not run directly through, but it skirts along the western limits of, the hamlet of Cuyler in Cortland County. At this point it is crossed by a county road running from the west into the middle of the hamlet of Cuyler.

As one approaches the hamlet moving in an easterly direction on the county road, considerable stretches of the State highway are visible on either side, but as one gets closer to the highway the physical arrangements tend to mask the adjacency of the State highway, and, indeed, its existence.

One photograph, taken in winter with some more snow on the ground than at the actual time of the accident here involved, with the camera 100 feet west of the edge of Route 13 pavement and facing easterly toward the hamlet, suggests that the location of Route 13, which seems to be in a slight hollow, could easily be overlooked by a driver proceeding east; the county road seems to continue westerly into a slight dip, up a grade into the hamlet. Drivers, in the absence of some key to attention or notice, would ordinarily expect to find intersecting roads within small hamlets rather than skirting them on the outer edge.

The concrete on Route 13 is banked at this point with the higher side on the west where the county highway comes in contact with it; and the county highway itself runs in an almost steady grade upward from east to west as it comes to Route 13 and continues the grade upward beyond it.

In more technically precise and measured terms, in the approach from the west over the county road to the intersection the county road is slightly upgrade for a distance of approximately 300 feet to a point about 25 feet from the west edge of the State highway, then almost level, although slightly downgrade (one degree) to the edge and then the banked concrete pavement of the State highway drops 6 inches in its 22-foot width to the east side.

One witness long familiar with the location described the State highway when approached from the west on the county road as being " a low place, a hollow in here (indicating) which is low until you get clear up ".

Another witness, a neighbor, described it by saying that " it is hard to see the road there, although it's clear each way, and it's on account of the banking, I expect, but weather conditions have as much to do with it as anything ". Still another witness familiar with it testified " you don't notice the road itself until you get onto it, as far as that's concerned ", and there was additional testimony, including that of a justice of the peace in the neighborhood, to the same general effect.

The accident involved in this appeal occurred December 27, 1951. Before April, 1944 there had been " Stop " signs on the approaches to Route 13 intersection from both east and west on the county road; but in that month the sign on the approach from the west was ordered removed by an order of the State Traffic Commission. A " Stop " sign remained on the approach from the east; and on the west approach a route marker containing the legend " N. Y. 13 L-R " was erected about 43 feet from the intersection. There was no other sign or marker on the west approach.

Between 3:30 and 4 o'clock in the afternoon of December 27, 1951 Charlotte Sebring, a girl 17 years old and unfamiliar with the road intersection, was driving a Plymouth sedan owned by her uncle Carl D. Horton in an easterly direction on the county road toward the Route 13 intersection. With her in the car was her brother Daniel Edward Horton.

Merton Ladd was driving a Studebaker car in a southerly direction on Route 13. With him was his son William Ladd, 15 years old. There is proof that it was a windy, blustery day with snow blowing " right up in a swirl " and " blowing hard ". One witness described it as " partially " daylight. Lights of both cars were on; but the proof is not clear as to whether they were the headlights.

As they approached the intersection the cars were going about 25 to 30 miles an hour. They collided. Both drivers were killed. Both boy passengers survived but were injured. The boys are the only witnesses. Neither saw the other car until they were close together. The Ladd boy described the car coming from the county road as " Just a black spot. That's all I saw was a black spot ". The Horton boy testified that a moment before the upset he saw the Studebaker car, which was light in color: " When I saw it, it was just like it was part of the snow."

The Court of Claims found that the State was not negligent in the occurrence of this accident; but it is our view of the facts that the evidence requires a finding that the State was negligent in failing to give adequate warning of this intersection on the westerly approach in view of the location of the intersection and the physical conditions surrounding it.

The decision of the Traffic Commission to remove a " Stop " sign on that side of the intersection resulted in increasing a hazard, the risk of which ought to have been foreseen. In our judgment its removal was negligence. (*Eastman* v. *State of New York*, 303 N. Y. 691; *Canepa* v. *State of New York*, 306 N. Y. 272.)

There is proof of some eight or nine accidents at the intersection after the removal of the " Stop " sign. Although there is no factual proof of how some of them occurred, and in some instances where there is proof, the circumstances differ from those here, there is proof of a suggestion made to an engineer of the State by a State police officer after investigating an accident that a " Stop " sign be erected and proof of some complaints from neighbors to the State police about the absence of an adequate sign. (See *Gurevitch* v. *State of New York*, 309 N. Y. 711.)

It readily follows from such a finding of negligence by the State that there should be judgments in favor of both injured passengers. We think the State has not established contributory negligence against either deceased driver. Merton Ladd was driving slowly on the State highway with care commensurate with the situation and would not reasonably expect a car would come suddenly from a secondary road into his path; and Charlotte Sebring in the absence of adequate signs would not be expected to think in this situation and on that day that a main State road would be encountered at the point she entered it. These conclusions lead us to direct the entry of judgment for all claimants.

We find claimants entitled to the following damages: Charlotte Hicks, administratrix of the estate of Charlotte Sebring, $20,000; Carl D. Horton, $767; Daniel E. Horton, $7,500; William Ladd, $15,000; Gertrude Ladd, $1,500 (medical expenses for William Ladd); Gertrude Ladd, as executrix of the estate of Merton Ladd, $40,000.

The judgments should be reversed on the law and the facts, with costs, and judgments directed for the claimants in accordance with this opinion.

Foster, P. J., Coon and Gibson, JJ., concur.

Judgments reversed, on the law and facts, and judgments directed in favor of the claimants against the State of New York in the following amounts: Charlotte Hicks, administratrix of the estate of Charlotte Sebring, $20,000; Carl H. Horton, $767; Daniel H. Horton, $7,500; William Ladd, $15,000; Gertrude Ladd, $1,500 (medical expenses for William Ladd); Gertrude Ladd, as executrix of the estate of Merton Ladd, $40,000. Settle order on notice.